UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

CORY LEE SOUDERS,

        Plaintiff,

v.

HEIDI WASHINGTON et al.,

        Defendants.

_____/

Case No. 1:18-cv-123

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. The events about which he complains occurred at that facility, the Earnest C. Brooks Correctional Facility (LRF) in

Muskegon, Michigan, and, arguably, every facility in which he has been incarcerated, because he contends he is being held pursuant to an invalid judgment. Plaintiff claims that Defendants are violating Plaintiff's constitutional rights by continuing to detain him pursuant to an invalid judgment.

Plaintiff sues MDOC Director Heidi Washington, Michigan Attorney General Bill Schuette, Assistant Attorney General H. Steven Langschwager, LRF Warden Shirlee Harry, LRF Deputy Warden Unknown Kowalski, LRF Assistant Resident Unit Supervisor Thomas Irby, LRF Grievance Coordinator T. Pipkins, LRF Corrections Officer Matthew Farber, LRF Sergeant Unknown VanderWagen, LRF Lieutenant Unknown Johnson, LCF Warden B. Hoffner, LCF Deputy Warden Bryan Morrison, LCF Prison Counselor Unknown Garrett, MDOC Records Administrator Diana Judge, MDOC Time Computation Unit Manager Cynthia Partridge, and MDOC Records Department Analysts Judy Bishop and Jill Krieghoff.

Plaintiff has sought relief for the allegedly unconstitutional detention from several sources. He filed a state habeas corpus petition in the Muskegon County Circuit Court. That court denied him relief by order entered December 12, 2016, informing Plaintiff that only the sentencing court could fix the error of which he complains. (Muskegon Cnty. Cir. Ct. Order, ECF No. 1-1, PageID.11.) Plaintiff also filed several administrative grievances with the MDOC to no avail. Plaintiff has sought reconsideration of the denial of his habeas petition in this court. (*Souders v. McQuiggin*, No. 2:10-cv-106 (W.D. Mich.), ECF No. 57.) Plaintiff also sought the assistance of the Corrections Ombudsman. He was interviewed on October 24, 2017, by Mr. Griffin Dean of that office. That interview has yet to result in any relief; however, Plaintiff claims it has prompted retaliation, on October 28 and 30, 2017, in the form of verbal harassment and sexual assault.

Plaintiff's allegations regarding the retaliatory conduct are sparse in the complaint; however, he does attach and reference a state court filing that includes more detail:

a) On 10/28/2017, Mr. Souders was informed by CPC Fuller that he would be rode-out as a result of his meeting with the Ombudsman. CPC Fuller knew this as she is good friends with the warden;

b) On 10/30/2017, Mr. Souders was sexually assaulted by Officer Matthew Farber; see cameras LRF 2300 and LRF 2401 @ approximately 1835 hours;

c) Mr. Souders went to his unit and had Ofcr. Mendoza call Lt. Johnson immediately after this assault and was further retaliated against with having his cell shaken down;

d) On 11/16/2017, Mr. Souders authored an email in the attempts to notify the state police of the above sexual assault. The email was censored by Inspector Plikta. (email attached as Exhibit 1). Inspector Plikta informed the officers contained in the email of the complaint.

e) On 11/16/2017, Ofcrs. Farber and Wharton conspired to have Ofcr. Carr shake me down purely for harassment purposes; see camera LRF 2300 @ approx. 1548 and speak to Ofcr. Overkamp;

f) Later that evening, Ofcr. Farber called me a "faggot" for making complaints; see cameras LRF 1200, 1303, and 2401, Sgt VanderWagen and Ofcrs. Wharton and Prince were witnesses. I immediately relayed this info to Ofcr. Shyne;

g) On 11/17/2017, at approx. 1430 hrs. Ofcr. Wharton targeted me in a group and shook me down purely for harassment; see cameras LRF 2300 and 1200;

h) On 11/17/2017, at approx. 1822 hrs., Ofcr. Nuttall stopped me outside of the chowhall for a shakedown and stated "this isn't going to end well for you"; see cameras LRF 2300 and 1200;

i) On 11/21/2017, Mr. Souders was transferred to Lakeland Correctional Facility. Mr. Souders was not afforded the opportunity to pack his property and was without his property until 11/29/2017. At which time Mr. Souders noticed a significant amount of his personal belongings were missing.

(Mot. for Immediate Relief, ECF No. 1-1, PageID.15.)

Plaintiff seeks a temporary restraining order and preliminary injunction stopping Defendants from enforcing the invalid judgment of sentence against him. Plaintiff also seeks damages for the harms he has suffered--retaliatory sexual assault and verbal harassment. Presumably all of the Defendants have played some role in Plaintiff's allegedly improper imprisonment in that he has informed them that he should be released, yet he remains incarcerated. Other than the quoted language above, Plaintiff does not identify the person or persons who verbally harassed him. Based on the quoted language, however, it appears the only named defendant who verbally harassed Plaintiff was Defendant Farber. Moreover, Plaintiff identifies Defendant Farber as the sexual assaulter[1], Defendant VanderWagen as a witness to the assault who stood by and did nothing, and Defendant Johnson as the person who heard Plaintiff's complaints about the assault after the fact, but did nothing.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[1] The sexual assault is described in a letter Plaintiff attaches to his complaint: "Ofcr. Farber called me over for a shakedown as I was [coming] out of the chowhall. He sexually assaulted me by hitting me in the testicles forcefully." (Nov. 16, 2017 Letter., ECF No. 1-1, PageID.16.)

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's allegations implicate his rights under the Fourteenth Amendment Due Process Clause, his First Amendment right to seek redress of grievances, and his Eighth Amendment right to be free of cruel and unusual punishment.

### III. The validity of the judgment of sentence

Plaintiff was initially charged with one count of first-degree criminal sexual conduct and one count of third-degree criminal sexual conduct, and the prosecutor filed a habitual offender-fourth offense notice. Plaintiff entered a no-contest plea to the charge of CSC-I. The prosecutor dismissed the other charge and the habitual offender notice. The court sentenced

Plaintiff to 17 years, 6 months to 50 years' imprisonment, to be served consecutively to the sentence for the offense for which Plaintiff was on parole when he committed the CSC-I. The court did not include lifetime electronic monitoring in the sentence. Plaintiff's principal claim herein arises from that omission.

When Plaintiff entered his plea, it was not clear whether the statutory mandate for lifetime electronic monitoring in MICH. COMP. LAWS § 750.520b(2)(d) applied to CSC-I convictions where the victim was 13 years old or older. The interplay between MICH. COMP. LAWS § 750.520b(2)(d) and MICH. COMP. LAWS § 750.520n proved confusing. The Michigan Court of Appeals issued a number of unpublished opinions that determined the statutory requirement of lifetime electronic monitoring for CSC-I convictions applied only where the defendant was 17 years or older and the victim was less than 13 years old. *People v. Floyd*, No. 297393, 2011 WL 4375096 (Mich. Ct. App. Sept. 11, 2011); *People v. Quintana*, No. 295324, 2011 WL 1901942 (Mich. Ct. App. May 19, 2011); *People v. Hampton*, No. 297224, 2011 WL 6376013 (Mich. Ct. App. Dec. 20, 2011); *People v. Bowman*, No. 292415, 2010 WL 4483698 (Mich. Ct. App. Nov. 9, 2010). In *People v. Brantley*, 623 N.W.2d 290 (Mich. Ct. App. 2012), *appl. for leave to appeal denied*, 821 N.W.2d 573 (Mich. 2012), the Michigan Court of Appeals parsed the language of the statute in greater detail and concluded that the requirement for lifetime electronic monitoring applied to all CSC-I convictions.

On June 23, 2017, the Michigan Supreme Court issued its opinion in *People v. Comer*, 901 N.W.2d 553 (Mich. 2017). The supreme court determined that Mich. Comp. Laws § 750.520b(2)(d) required lifetime electronic monitoring in **all** CSC-I cases, **except** where the defendant was sentenced to life imprisonment without parole. *Comer*, 901 N.W.2d at 560. The court stated "[b]ecause defendant's judgment of sentence did not include [the] statutorily mandated

punishment [of lifetime electronic monitoring] . . . his sentence was invalid." *Id*. (footnote omitted.) The court also determined that trial courts could not *sua sponte* correct the error. *Id*. at 564. Rather, a party was required to raise the issue by motion.[2] *Id*.

At the time *Comer* was decided, Petitioner had an application for leave to appeal pending in the Michigan Supreme Court. The application for leave to appeal was held in abeyance pending the *Comer* decision. *People v. Souders*, 885 N.W.2d 248 (Mich. 2016). The Michigan Supreme Court took up Plaintiff's application three months after the *Comer* decision. In lieu of granting leave to appeal, the supreme court vacated the trial court's October 20, 2014, revocation of its September 15, 2014, amended judgment of sentence and remanded the case directing the trial court to reinstate the September 15, 2014, amended judgment of sentence. *People v. Souders*, 903 N.W.2d 192 (Mich. 2017). The trial court reinstated that judgment of sentence by order entered December 13, 2017.

The difference between the original judgment of sentence, entered February 26, 2009 (ECF No. 1-1, PageID.19), and the reinstated amended judgment of sentence, initially entered September 15, 2014 (*Id*., PageID.20), has nothing to do with lifetime electronic monitoring. Neither judgment imposes that penalty. The difference arises from Plaintiff's challenge to the imposition of court costs. The former judgment imposed costs of $700.00; the latter judgment waived those costs. Thus, the issue Plaintiff presented to the state appellate courts appears to have been similar to *Comer* in only one respect: the trial court had acted *sua sponte* to "correct" the sentence. It appears, however, that Plaintiff's case and Comer's case were different

---

[2] The *Comer* Court noted that this result was dictated by Michigan Court Rules 6.435 and 6.429. The court indicated that, in the future, it might exercise its rulemaking authority to permit a court to correct invalid sentences on the court's own initiative. *Comer*, 901 N.W.2d 553, 564 n.54.

with respect to what was corrected. It does not appear that Plaintiff's trial court was addressing the lifetime electronic monitoring issue at all.

Thus, it is entirely possible that, even nine years after the fact, Plaintiff's judgment is "invalid" under *Brantley* and *Comer*. Plaintiff seizes upon that invalidity to raise two points: first, the MDOC should release him immediately because they have no right to incarcerate him pursuant to an invalid sentence; and second, if the invalidity is remedied such that the sentence includes lifetime electronic monitoring, the remedy would render his plea unknowing and involuntary because he was never made aware of lifetime electronic monitoring as a consequence of his plea.

Plaintiff allots the "invalidity" of his sentence greater significance than do the Michigan courts. The determination that a sentence is invalid does not deprive a sentence of all force and effect. "An invalid sentence refers to any error or defect in the sentence or sentencing procedure that entitles a defendant to be resentenced or have the sentence changed." *People v. Catanzarite*, 536 N.W.2d 570, 583 (Mich. Ct. App. 1995) (citing *People v. Pfeiffer*, 523 N.W.2d 640, 643 (Mich. Ct. App. 1994)). Under the Michigan Court Rules the court's power to change a sentence it imposes depends upon whether that sentence is "valid" or "invalid." *Pfeiffer*, 523 N.W.2d at 643 (citing Mich. Ct. R. 6.429 Staff Note). Put simply, under Michigan law, an invalid sentence does not permit a prisoner to go home, it permits the court to resentence him, on motion from a party. At this point, however, no court has declared Plaintiff's sentence to be "invalid."

Plaintiff's second point, that a "valid" sentence, a sentence that includes lifetime electronic monitoring, would permit him to withdraw his plea, finds support in the *Comer* concurrence authored by Michigan Supreme Court Justice Brian Zahra. Justice Zahra noted that under *People v. Cole*, 817 N.W.2d 497 (Mich. 2012), the trial court's failure to advise a defendant

that he is subject to lifetime electronic monitoring as a direct consequence of his plea renders the plea constitutionally invalid. *Comer*, 901 N.W.2d at 555. For that reason, Justice Zahra suggested the proper remedy when a court *sua sponte* added lifetime electronic monitoring to render a sentence after a plea valid, would not be to vacate the valid judgment and return to an invalid one, but to "'give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea.'" *Id*. at 556.[3]

Based on the remedy approved by the majority, however, Justice Zahra's suggested approach seems to put the cart in front of the horse. The majority's approach requires first, that the *ultra vires* correction of the judgment be reversed. That occurred here when the trial court reinstated the September 15, 2014, judgment of sentence. Next, a party must move for the purportedly invalid judgment to be corrected. The docket sheet suggests Plaintiff has done that as well.[4] Only then can the court correct the substantive error in the sentence.

It appears, however, that the trial court denied Plaintiff's request for relief. That is not surprising, the trial court has previously informed Plaintiff that "there is nothing invalid about [Plaintiff's] sentence . . . ." (July 18, 2016, Letter., ECF No. 1-1, PageID.18.) Thus, the judgment as it stands, rightly or wrongly, does not present the *Cole* issue: it does not include a direct

---

[3] Indeed, for every case held in abeyance pending the *Comer* decision, where the *sua sponte* correction was adding lifetime electronic monitoring and the defendant had entered a plea, Justice Zahra raised this issue. *See People v. Johnson*, 901 N.W.2d 627 (Mich. 2017); *People v. Guzikowski*, 901 N.W.2d 891 (Mich. 2017); *People v. Luke*, 901 N.W.2d 892 (Mich. 2017). In the category of cases where either: (1) the *sua sponte* correction addressed a different issue or (2) the defendant had not entered a plea--the category that apparently includes Plaintiff's case--Justice Zahra did not write separately, providing further support that Plaintiff's case did not raise the lifetime electronic monitoring issue. Moreover, it is possible that withdrawing the plea or accepting lifetime electronic monitoring may not be the only choices. In *People v. Marin*, 901 N.W.2d 388 (Mich. 2017), where the defendant was convicted pursuant to jury verdict, not a plea, the Michigan Supreme Court invited the prosecutor to address another option in briefing: "whether the defendant is entitled to have the provision of lifetime electronic monitoring . . . vacated from his judgment of sentence for failure to provide notice of the penalty in advance of trial . . ." *Id*. That remedy would leave Plaintiff in exactly the position he finds himself right now.

[4] Plaintiff's position is somewhat disingenuous--to claim in the first instance that his sentence is not as harsh as it should be, and then, if and when it is made appropriately harsh, complain that it is too harsh.

9

consequence of Plaintiff's plea of which he was not informed. In short, the "invalidity" of Plaintiff's sentence does not warrant his release and the failure to correct that "invalidity" precludes withdrawal of his plea under *Cole*.

The merits of Plaintiff's argument regarding the validity of his sentence, however, is immaterial because the remedy he seeks, injunctive relief releasing him from prison, is available in a habeas corpus proceeding. It is not available in a prisoner civil rights action under 42 U.S.C. § 1983.

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, because Plaintiff's complaint plainly challenges the fact and duration of his incarceration, it must be dismissed. *See Barnes v. Lewis*, No. 93-5698, 1993 WL 515483, at *1 (6th Cir. Dec. 10, 1993) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

Because Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck*, 512 U.S. 477. In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged

unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997) (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations clearly call into question the validity of his sentence and his conviction. Therefore, his action is barred under *Heck* until his sentence or conviction has been invalidated in the state court, or in this court on a petition for habeas corpus relief.

    IV.    <u>First Amendment retaliation</u>

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The only Defendants that Plaintiff claims took "adverse action" against him are Defendants Farber, VanderWagen, and Johnson. Defendant Farber shook Plaintiff down on October 30, 2017, and hit Plaintiff in the testicles in the process. (ECF No. 1, PageID.7; ECF No. 1-1, PageID.15-16.) Defendant VanderWagen witnessed the assault and did nothing. (ECF No. 1, PageID.7.) Plaintiff complained to housing unit officers who told Defendant Johnson, yet Johnson did nothing. (*Id*.) Defendant Farber called Plaintiff a "faggot" for making complaints. (ECF No. 1-1, PageID.15.) Defendant VanderWagen witnessed the verbal harassment and, presumably, did nothing. (*Id*.) Defendant Farber conspired with Officer Wharton to have Officer Carr shake Plaintiff down. (*Id*.)

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Thus, it appears that Plaintiff's many grievances, his written complaints to MDOC officials, and his complaint to the Ombudsman are constitutionally protected conduct. Plaintiff's allegations fall short, however, with regard to the adverse action and the link between the adverse action and the protected conduct.

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The first "adverse action" is Defendant Farber's shakedown and assault of Plaintiff on October 30, 2017. In *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503-504 (6th Cir. 2011), the court indicated that a single shakedown accompanied by an excessive use of force might suffice to deter a prisoner of ordinary firmness

from engaging in protected activities in the future. Plaintiff offers no allegations, however, to demonstrate that Defendant Farber's adverse action was linked in any way to Plaintiff's alleged protected conduct. Indeed, there is no allegation of a complaint implicating Defendant Farber before that incident.

After the October 30 incident, Plaintiff complained of Defendant Farber's conduct by way of an email. That conduct appears to have motivated Defendant Farber to call Plaintiff a name. Plaintiff alleges specifically that Defendant Farber called him a name "for making complaints." (ECF No. 1-1, PageID.15.) Defendant Farber's action of calling Plaintiff a name, however, is not so adverse as to deter a prisoner of ordinary firmness from engaging in protected activities. In *Thaddeus-X*, the Sixth Circuit recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus* 175 F.3d at 398-99 (citing *Bart*, 677 F.2d at 625). "[V]erbal abuse, foul language, and insensitive comments made to or about a plaintiff generally do not constitute adverse action." *Hilton v. Mish*, 224 F. Supp. 595, 603 (W.D. Mich. 2016) (citing *Taylor v. City of Falmouth*, 187 F. App'x 596, 600-01 (6th Cir. 2006)); *see also Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) ("[O]f the two retaliatory acts . . . false disciplinary report and verbal harassment, only the first was an adverse action . . . ."); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) ("An inmate has no right to be free from verbal abuse . . . .").

Although Plaintiff alleges that Defendant Farber conspired with other non-Defendants to subject Plaintiff to shakedowns, his allegations of conspiracy are woefully inadequate. A plaintiff must plead a conspiracy with particularity, as vague and conclusory

13

allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Here, Plaintiff offers nothing more than the conclusory statement that "Ofcrs. Farber and Wharton conspired to have Ofcr. Carr shake me down . . . ." (ECF No. 1-1, PageID.15.) Simply alleging the word "conspired" is not enough.

Plaintiff's allegations regarding the retaliatory conduct of Defendants VanderWagen and Johnson also fall short, but for a different reason. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants VanderWagen or Johnson engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

V.  Eighth Amendment claim

Plaintiff's allegation that Defendant Farber hit Plaintiff in the testicles during a shakedown implicates the Eighth Amendment. The Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners. U.S. Const. amend. VIII. But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8, (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth

15

Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

The *Hudson* Court noted that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

In the context of a patdown, contact between the guard's hand and the prisoners genitalia is purposeful. *See Terry v. Ohio*, 392 U.S. 1, 16-17 n. 13 (1968) ("'[T]he officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet.'") Thus, it is not surprising that the person being searched might perceive the incident as assaultive. Nonetheless, courts have found intrusions far more extensive than that suffered by Plaintiff here to pass constitutional scrutiny. *See, e.g., Ragland v. City of Milwaukee*, 104 F. Supp. 3d 958, 963 (E.D. Wis. 2015) (first officer squeezed plaintiff's testicles five times, second officer squeezed them three times); *Montero v. Crusie*, 153 F. Supp. 2d 368, 375 (S.D.N.Y. 2001) ("several" instances of squeezing of an inmate's penis, with no allegation of injury, is not sufficiently serious); *Carpenter v. Sheriff of Roanoke City*, No. 7:05cv667, 2006 WL 2709691, *4 (W.D. Va. Sept. 20, 2006) (not sufficiently serious where guard "'chopp[ed]' prisoner's testicles and 'pulled violently down" on prisoner's penis and testicles, but examination the following day found no signs of injury); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (grabbing penis during pat frisk fails to state Eighth Amendment claim); *Barley v. Jamison*, No. 2:10-cv-1036, 2014 WL 186107, *4 (M.D. Ala. Jan. 16, 2014) (not sufficiently serious where guard, during search, grabbed prisoner's testicles and penis, bounced them, and snatched them away from prisoner's body); *Cherry v. Frank*, No. 03–C–129, 2003 WL 23205817, *12 (W.D. Wis. Dec. 4, 2003) (during strip search, "[a]ny manual search of an individual's body will require some amount of manipulation of the genitals in order to accomplish the purpose of the search. Although 'grabbing' and 'tugging' could cause some discomfort and embarrassment, it does not rise to the level of 'unnecessary and wanton infliction of pain' so long as it occurs as part of an otherwise justified search), *aff'd*, 125 F. App'x 63 (7th Cir. 2005); *Young*

*v. Brock*, No. 10-cv-01513, 2012 WL 385494, *4 (D.Colo. Feb. 7, 2012) (where officer allegedly fondled and squeezed inmate's genitals during pat-down search, "caselaw is clear that such a single pat-down search cannot be said to violate the Constitution") (citing similar cases). Plaintiff does not allege any injury or that he sought medical attention. As alleged by Plaintiff, this contact, is *de minimis* and does not give rise to a constitutional claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: February 27, 2018         /s/ Paul L. Maloney
                                 Paul L. Maloney
                                 United States District Judge